**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**


IN RE:  HARD ROCK EXPLORATION, INC.

                        Debtor.

DUANE YOST, et al.,

                        Appellants,

v.                                    Civil Action No.     2:20-cv-00276

THE HUNTINGTON NATIONAL BANK, et al.,

                        Appellees.

---

JAMES STEPHENS, JR.;
MONICA FRANCISCO;
DUANE YOST; and
GREGORY LAUGHLIN,

                        Plaintiffs,

v.                                    Miscellaneous Proceeding No.:  2:17-mp-02001


THE HUNTINGTON NATIONAL BANK;
and CHAD PRATHER,

                        Defendants.

---

THE HUNTINGTON NATIONAL BANK,

                        Plaintiff,

v.                                    Adversary Proceeding No.:   2:18-ap-02005

DUANE YOST; JAMES STEPHENS,
JR.; GREGORY LAUGHLIN; and
MONICA FRANCISCO,

                        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are the Bankruptcy Court's Report and Recommendation, (ECF No. 21), and the Joint Motion to Remand, (ECF No. 24).  This matter was referred to Bankruptcy Judge Paul M. Black of the Western District of Virginia for submission of proposed findings and a recommendation for disposition ("PF&R").  On May 18, 2021, Judge Black filed his PF&R, finding that the court lacked subject matter jurisdiction to preside over these matters and recommending that this Court transfer Adversary Proceeding No. 2:18-ap-02005 ("Federal Court Action") to the United States District Court for the Northern District of West Virginia and stay Miscellaneous Proceeding No. 2:17-mp-02001 ("State Court Action") pending further action in the Federal Court Action.  (ECF No. 21.)  Duane Yost, Gregory Laughlin, James Stephens, Jr., and Monica Francisco (the "Individuals") filed objections on May 31, 2021, (ECF No. 22), and Huntington National Bank ("Huntington") filed objections on June 1, 2021, (ECF No. 23).

For the reasons discussed herein, the Court **ADOPTS** the PF&R, (ECF No. 21), and **TRANSFERS** the Federal Court Action and State Court Action to the United States District Court for the Northern District of West Virginia.

### I.   BACKGROUND

A detailed recitation of the extensive facts of this action can be found in Judge Black's PF&R and therefore need not be repeated here.  The Court will provide a discussion of any relevant facts as necessary throughout this opinion to resolve the parties' objections.

### II.   LEGAL STANDARD

The Bankruptcy Court is authorized to submit proposed findings and recommendations to the district court on non-core matters that are otherwise related to a case under Title 11.  28

U.S.C. § 157(c)(1).  In such a proceeding, the district court has jurisdiction to make a *de novo* review of "those matters to which any party has timely and specifically objected."  *Id.*; Fed. R. Bankr. P. 9033(d) (authorizing district courts to "make a *de novo* review upon the record . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made"); *see also Humboldt Express, Inc. v. Wise Co.* (*In re Apex Express Corp.*), 190 F.3d 624, 630 (4th Cir. 1999) (*de novo* standard applies to both findings of fact and conclusions of law); *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 33 (2014). The district court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

## III. DISCUSSION

Regarding the PF&R, Huntington narrowly objects to the finding that subject matter jurisdiction does not exist, arguing that the wrong legal test was applied.  (ECF No. 23 at 5–6.) However, while Huntington argues the incorrect legal analysis was applied, it "agrees with the outcomes in the Report and Recommendation[.]"  (*Id.* at 5.)  Conversely, the Individuals agree with the finding that subject matter jurisdiction does not exist, but object to the PF&R's recommendation to stay the State Court Action pending resolution of the Federal Court Action. (ECF No. 22 at 5, 7, ¶¶ 5, 11.)  The Individuals argue that because there is no bankruptcy or federal court subject matter jurisdiction over the State Court Action, "the stay recommended by Judge Black is without legal basis and would constitute a ruling in excess of this Court's authority and jurisdiction," and would result in the deprivation of the Individuals' "substantive and procedural due process."  (*Id.* at 7–8, ¶ 13.)  Each is discussed in turn.

3

A.  *Bankruptcy Court Jurisdiction.*

Federal law provides that district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11."  28 U.S.C. § 1334(b).  This Court's local rules provide that "all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition."  L.R. Civ. P. 83.13 (citing 28 U.S.C. § 157(a)).  If a proceeding fails to relate to, arise in or arise under Title 11, then the court lacks jurisdiction under 28 U.S.C. § 1334(b).

In this case, Judge Black determined that this Court does not have "arising under," "arising in," or "related to" subject matter jurisdiction over the remaining two adversary proceedings.  Huntington objects, arguing that all three types of subject matter jurisdiction exist.  While persuasive, Huntington's rationale ultimately falls short.

1.  *"Core" Bankruptcy Jurisdiction*

Title 11 of the United States Code governs bankruptcy and the terms "arising under," "arising in" and "related to" are terms with special meanings in relation to bankruptcy law.  *See New Horizon of NY, LLC v. Jacobs*, 231 F.3d 143, 150-51 (4th Cir. 2000).  Claims or proceedings that "arise under" or "arise in" Title 11 are considered "core" proceedings.  *See* 28 U.S.C. § 157(b)(2).  A proceeding arises *under* Title 11 "if it is a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy."  *In re Kirkland*, 600 F.3d 310, 316 (4th Cir. 2010).  Examples of proceedings that arise under Title 11 "include administrative matters, allowance or disallowance of claims, determination of liens and other matters that take place as part of the administration of the bankruptcy estate."  *Barge v. W. S. Life*

4

*Ins. Co.*, 307 B.R. 541, 544 (S. D. W. Va. 2004) (citing 1 Collier on Bankruptcy ¶ 3.01(4)(b)(iv) (15th ed. 2003)).   A proceeding arises *in* Title 11 when it is "not based on any right expressly created by Title 11, but nevertheless . . . would have no practical existence but for the bankruptcy." *Valley Historic Ltd. P'ship v. Bank of NY*, 486 F.3d 831, 835 (4th Cir. 2007); *In re AH Robins Co., Inc.*, 86 F.3d 364, 372 (4th Cir. 1996).

This Court has noted that "[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the bankruptcy courts."   *In re Albertson*, 535 B.R. 662, 667 (S.D. W. Va. 2015) (internal citations omitted).   Rather, in determining whether a proceeding is core or noncore, courts have considered whether (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2); (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise exist independently from Title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings.   *Id.* (collecting cases).

Huntington objects to Judge Black's PF&R because "as explained by Huntington in the Jurisdiction briefs, the Adversary Proceedings involve claims which are property of the estate and subject to the 'core' jurisdiction of the Bankruptcy Court."   (ECF No. 23 at 5 ("Because the counterclaims of the Individual[s] are simply disguised claims of the Hard Rock Entities[,] they are 'core' within the meaning of 28 U.S.C. § 157.").)   Notably, while Huntington does not direct the Court to a specific error in the PF&R's analysis and instead "incorporates" its previous briefings to its objection,[1] the Court disagrees with its position that these proceedings are core.

---

[1] This "specific objection" requirement in 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033(d) is similar to the standard of review given to objections to a magistrate judge's proposed findings and recommended disposition of a

First, these claims are not based on any right expressly created by Title 11, nor are they specifically identified as core proceedings in 28 U.S.C. § 157(b)(2). *See Valley Historic Ltd. P'ship*, 486 F.3d at 835–36; *In re Albertson*, 535 B.R. at 667. As the PF&R noted, each of these claims are based in West Virginia state law, not the bankruptcy code, and were "antecedent" to the filing of bankruptcy. (ECF No. 21 at 9.) "It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case, and whether it caused the bankruptcy is immaterial." *Valley Historic Ltd. P'ship*, 486 F.3d at 836. Moreover, and as the PF&R observed, "[t]he Individuals' claims in their personal capacity as guarantors, however, *did not become property of the estate*," a finding further solidified with the dismissal of the Debtors' claims against Huntington. (ECF No. 21 at 11 (emphasis added).) Evidently, then, the parties' rights and obligations are not significantly affected by the confirmation of the bankruptcy plan, and the claims clearly exist outside of the bankruptcy. *See Valley Historic Ltd. P'ship*, 486 F.3d at 835; *In re Albertson*, 535 B.R. at 667. Therefore, because the claims themselves did not "arise in" or "arise under" Title 11, they cannot be said be core proceedings.

Admittedly, the position advanced by Huntington invokes complex questions of jurisdiction. However, because the Individuals' lender liability claims were never within the scope of core bankruptcy jurisdiction, as discussed above, it is axiomatic that the issue of their

---

dispositive matter. *See* Fed. R. Bankr. P. 9033 advisory committee's note (subdivision (d) adopts the de novo review provisions of Fed. R. Civ. P. 72(b)). In this sense, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D.Mich.2004). *See also Silagy v. Morris*, No. 5:13-cv-2645, 2015 WL 853499, at *13 (N.D. Oh. Feb. 26, 2015) (rejecting as non-specific party's objection by incorporation of previous arguments); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 WL 5825308, at *6, n.10 (S.D.N.Y. Nov. 10, 2014) (refusing to consider arguments incorporated by reference, unless specifically set forth).

standing regarding those claims is not within the scope of core bankruptcy jurisdiction. "Bankruptcy courts, like other federal courts, are courts of *limited* jurisdiction."   *In re Tara Retail Grp., LLC*, 634 B.R. 509, 516 (Bankr. N.D. W. Va. 2021) (emphasis added). Accordingly, bankruptcy courts "must be alert to avoid overstepping their limited grants of jurisdiction." *McCorkle v. First Pa. Banking & Trust Co*., 459 F.2d 243, 244 n.1 (4th Cir. 1972). The limited grant is threefold: Bankruptcy courts are granted constitutional authority pursuant to Article I, Section 8, Clause 4 of the United States Constitution; subject matter jurisdiction pursuant to 28 U.S.C. § 1334; and statutory authority pursuant to 28 U.S.C. § 157.  *See Harvey v. Dambowsky* (*In re Dambowsky*), 526 B.R. 590, 595 (Bankr. M.D. N.C. 2015).   "Therefore, in order for a bankruptcy court to hear and determine any matter, it must have subject matter jurisdiction . . ., statutory authority . . ., and constitutional authority." *Id.*

Entangled in this question of the Bankruptcy Court's jurisdiction and authority is that of standing.[2]  While Huntington contends that the lender liability claims "are the exclusive property of the bankruptcy estate and cannot be pursued by the Individuals," (ECF No. 23-1 at 13), the Individuals' alleged lack of standing does not bring these claims within the scope of 28 U.S.C. § 157, and the Bankruptcy Court lacks statutory authority—and ultimately, jurisdiction—as a result.[3]  And as already explained, because these claims did not arise in or under Title 11, they

---

[2] While the Court is cognizant that standing is typically a "threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States," see *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001), the added wrinkles of bankruptcy subject matter jurisdiction clearly show that the Bankruptcy Court lacks core jurisdiction over this matter. *Cf. Sierra Club v. Morton*, 405 U.S. 727, 732 (1972) ("Where, however, Congress . . . has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.")

[3] On this point, the Court notes that the Individual Defendants maintain that they have brought claims independent of those asserted by the Debtor, memorialized in the hearing held on April 9, 2021 in the bankruptcy court:

cannot be considered "core." Accordingly, Huntington's objections to this portion of the PF&R are **OVERRULED**.

### 2. *Non-core Bankruptcy Jurisdiction*

A proceeding that is "related to a case under title 11, but not arising under title 11, or arising in a case under title 11" is a "non-core" proceeding. *Bowles v. Massey Energy Co.*, No. 2:12-cv-05997, 2012 WL 6628953, at *4 (S. D. W. Va. Dec. 19, 2012) (internal quotations omitted). A proceeding is related to a case under Title 11 "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action . . . and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *New Horizon*, 231 F.3d at 151 (citing *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997)). Furthermore, "common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate" alone "does not bring the matter within the scope of [§ 1334(b)]." *Id.* (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293-95 (3d Cir. 2012)).[4] *See also Valley Historic*, 486 F.3d at 836.

---

MR. BENNINGER: As we state in our papers, [the Individual Defendants] are borrowers; they're makers on the notes on – on Obligation No. 42, which is $6.25 million, that they took out themselves. And again, co-counsel, if I've mis-stated something here – but, and then they also have another –

THE COURT: Are they makers with the Debtor or are they independent borrowers? Or does that matter?

MR. BENNINGER: Independent borrowers.

(ECF No. 25-1 at 37:10–21.) As explained above, reaching even the threshold question of standing means reaching beyond the bounds of the statutory authority granted to bankruptcy courts.

[4] In *Nuveen*, the Third Circuit distinguished its previous holding in *Pacor*:

There is one twist to the otherwise straightforward application of *Pacor*'s conceivability standard.

8

Here, Huntington argues that the PF&R applied the wrong legal test.  The PF&R applied the *Pacor* test despite the fact that *Pacor* was decided in a pre-confirmation context because "[w]hile a plan has been confirmed here, these adversary proceedings were commenced pre-confirmation[.]"  (ECF No. 21 at 10 n. 6.)  Huntington contends, though, that the *Porges* test should have been applied because these adversary proceedings were commenced pre-confirmation.  Huntington argues that applying *Porges* is appropriate because the Bankruptcy Court should have analyzed the question as to *retaining* jurisdiction, rather than exercising jurisdiction in the first instance as contemplated by *Pacor*.  (ECF No. 23 at 6.)  Notably, neither *Porges* nor *Pacor* fits neatly with the procedural stance of this case, yet the result is the same when either is applied.

The United States Circuit Court of Appeals for the Third Circuit addressed the issue of jurisdiction in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).[5]  There, John and Louise Higgins brought suit against Pacor, Inc. in the Pennsylvania Court of Common Pleas, seeking damages for Mr. Higgins' alleged exposure to asbestos.  *Id.* at 986.  Pacor, Inc. then filed a third-party complaint against the Johns-Manville Corporation, the alleged manufacturer of the asbestos.  *Id.*  Subsequently, Johns-Manville filed for bankruptcy.  *Id.*  However, the following

---

If an action is brought after the confirmation of a plan in a related bankruptcy proceeding, the post-confirmation context of the dispute alters the related to inquiry. Because a bankruptcy court's jurisdiction wanes after the confirmation of a case, retention of bankruptcy jurisdiction may be problematic . . . . At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. Nonetheless, courts do not usually apply *Pacor*'s effect on the bankruptcy estate test so literally as to entirely bar post-confirmation bankruptcy jurisdiction. Instead, they apply varying standards that focus on whether the action could conceivably affect the implementation of the confirmed plan.

*Nuveen*, 692 F.3d at 294-95 (internal citations and quotations omitted).

[5] The Supreme Court has since overruled *Pacor* in part, *see Things Remembered, Inc. v. Petrarca,* 516 U.S. 124 (1995) (overruling *Pacor*'s holding that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case), but has not disturbed the "related to" jurisdiction test.

month, the Court of Common Pleas severed the third-party action from the main Higgins action. *Id.* Shortly before the main Higgins action went to trial, Pacor, Inc. filed a petition for removal, seeking to remove the entire action—including the severed third-party action—to the bankruptcy court. *Id.* While the bankruptcy court initially ruled that the removal was time-barred by the thirty-day time limit contained in Interim Bankruptcy Rule 7004(a), the district court held on appeal that the time limit could be extended, but that regardless, the original Higgins action was not "related to" the Johns-Manville bankruptcy, such that the bankruptcy court lacked jurisdiction under 28 U.S.C. § 1471(b). *Id.* Regarding the third-party action, however, the district court found that it was "related to" the bankruptcy proceeding and remanded that portion of the case to the bankruptcy court. *Id.*

Pacor, Inc. appealed the portion of the district court order remanding the original Higgins action to state court, arguing that the action was sufficiently related to the bankruptcy proceeding such that the bankruptcy court could exercise jurisdiction. *Id.* at 995. The Third Circuit, in addressing this argument, articulated the following test for whether a civil proceeding is related to bankruptcy: A reviewing court must determine "whether *the outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy*." *Id.* (emphasis in original). In examining the original Higgins action, the Third Circuit reasoned that the controversy was between two non-parties to the bankruptcy; could not affect the Johns-Manville bankruptcy estate; and "could not determine any rights, liabilities, or course of action" of Johns-Manville. *Id.* Addressing Pacor, Inc.'s argument regarding third-party indemnification, the Third Circuit stated that, "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Id.*

10

While *Pacor* was decided in a pre-confirmation context, the Fourth Circuit recognized that in post-confirmation cases it was important to retain the "essential inquiry" of the "related to" jurisdiction. *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007). That essential inquiry "appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166 (3d Cir. 2004)). Accordingly, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

The Court now turns to Huntington's assertion that the PF&R should have applied the test articulated in *Porges*. In *Porges*, the Chapter 13 debtor and former stockbroker had a New York Stock Exchange arbitration commenced against him by his former employer to recover on promissory notes. *In re Porges*, 44 F.3d 159, 161 (2d Cir. 1995). Three days before the first arbitration hearing, the debtor filed for bankruptcy, triggering the automatic stay of the arbitration. *Id.* The employer then initiated an adversary proceeding in the bankruptcy case against the debtor. *Id.* Shortly following a bench trial on the adversary proceeding, in which the court orally ruled in the employer's favor, the debtor moved to dismiss his petition. *Id.* Ultimately, the bankruptcy court granted the dismissal of the petition, but expressly retained jurisdiction of the adversary proceeding pursuant to 11 U.S.C. § 349. *Id.* at 162. The debtor appealed the bankruptcy court's retention of jurisdiction, first to the district court and then to the circuit court of appeals. *Id.* On appeal, the Second Circuit held that the bankruptcy court properly retained jurisdiction over the adversary proceeding by considering four factors. Those

11

factors, otherwise known as the "*Porges* Test," are as follows: (1) judicial economy, (2) convenience to the parties, (3) fairness, and (4) comity. *Id.* at 163. *See also In re Affiliate Servs., LLC*, No. 2:20-MC-00155, 2021 WL 2078006, at *3 (S.D.W. Va. May 24, 2021).

Despite Huntington's assertions to the contrary, the Court believes that the *Porges* test is not appropriate in this case. To begin, the procedural posture in the present case differs from *Porges*. As explained above, the employer in *Porges* initiated the adversary proceeding *after* the commencement of the bankruptcy case, and the bankruptcy itself ended with no confirmed plan. *See Porges*, 44 F.3d at 161. Here, the adversary proceedings were drawn into the bankruptcy case, as they had existed prior to its commencement, and the bankruptcy case itself was resolved with a confirmed Chapter 11 plan. (*See* ECF No. 21 at 5.) Additionally, *Porges* provided for the exercise of post-dismissal jurisdiction where the bankruptcy court expressly retained jurisdiction over the related proceeding. *Id.* Again, that differs from the matter at hand, where the issue of jurisdiction was raised *sua sponte*.

Regardless, the *Porges* factors do not necessarily support Huntington's position.[6] First, as to judicial economy, these claims would admittedly be better adjudicated in one forum. But that forum is not the bankruptcy court, as efficiency would be hindered considering further *de novo* review of the bankruptcy court's findings, absent consent of the parties. *In re Travers*, 507 B.R. 62, 74 (Bankr. R.I. 2014) (also noting that "greater delay may attend this proceeding if [the bankruptcy court] retains jurisdiction to rule on the merits; . . ., another layer of *de novo* judicial review by the district court would be required for the entry of a final judgment"). Second, as to convenience to the parties, while the Court is again faced with the convenience of adjudicating

---

[6] The Court again notes the deficiency in Huntington's objection, as it primarily notes that it believes the PF&R applied the wrong test, while directing the Court to its prior briefing on the issue. *See supra*, at 5, n.1.

the remaining claims in a single forum, the Court notes too that these cases originated outside of this district.  These claims all originated in the Northern District of West Virginia, including the corresponding state action, so to litigate them in the Southern District seems an inconvenience in itself.  But, beyond this, Huntington has failed to identify any notable inconvenience to the parties.  Third, as to fairness, neither party will be unfairly asked to relitigate any issue.  *Id.* Moreover, any completed discovery can continue to be utilized by the parties.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529(LMM), 2010 WL 4910223 at *1 (S.D.N.Y. Nov. 22, 2010).

However, Huntington asserts that it would be "monumentally unfair" if the lender-liability claims were returned to their originating courts because the "determination as to whether the lender liability claims of the Individual Defendants are property of the bankruptcy estate" involves "bankruptcy issues," running a high risk of a "flawed ruling on pure bankruptcy issues from a court lacking in bankruptcy expertise."  (ECF No. 23-1 at 5.)  Yet, this argument is premised on the assumption that the Individuals' claims are property of the estate, which the PF&R expressly found they were not, a finding supported by the dismissal of the Debtors' claims against Huntington.  (ECF No. 21 at 11.)  As to the remaining factor, comity, the State Court Action was filed before the Federal Court Action.  Thus, the Federal Court Action is not entitled to any preference over the State Court Action and to treat it as such would violate the notion of comity.  Moreover, these claims do not involve any interpretation of bankruptcy law, rendering the bankruptcy court "no better equipped to adjudicate them than any other judicial forum."  *Id.* at 74.  Instead, these claims all involve application of West Virginia state law, which both the

federal and state court are well-positioned to address.  Thus, when balancing these factors, it is apparent that the bankruptcy court should not retain jurisdiction in this instance.

While the Court believes that the *Pacor* "related to" test and the *Valley Historic* progeny are more instructive to the case at hand, the application of either *Pacor* or *Porges* results in the same conclusion.  Ultimately, as this Court has recently explained

> [T]he decision of whether to retain jurisdiction over an adversary proceeding when the underlying bankruptcy case is dismissed is generally left to the sound discretion of the court.  While the dismissal of the bankruptcy case does not automatically divest the bankruptcy court of jurisdiction over related proceedings, the dismissal of those adversary proceedings is generally favored.

*In re Affiliate Servs., LLC*, 2021 WL 2078006, at *3  (internal quotations and citations omitted). Here, the one place these adversary proceedings do not belong is in the Southern District of West Virginia.   Thus, because it is within the Court's discretion as to whether to hear these proceedings, the Court declines to do so.  Huntington's objections to this portion of the PF&R are **OVERRULED**.  Accordingly, because these are not core proceedings and the bankruptcy court lacks non-core jurisdiction, the reference shall be **WITHDRAWN**.

### B.   Stay of the State Court Action

In deciding what to do with this "procedural conundrum," the PF&R recommended staying the State Court Action pending the resolution of the Federal Court Action because the parties agreed that nothing alleged in the State Court Action could not be resolved in the Federal Court Action.  (ECF No. 21 at 14.)  The Individuals object, arguing that this recommendation "lacks a factual and legal basis."  (ECF No. 25 at 4.)  As to a factual basis, they contend that there are issues in the State Court Action that cannot be resolved in the Federal Court Action— namely, Chad Prather, Huntington's loan official, is a named party in the State Court Action but

not the Federal Court Action.  (*Id.* at 5.)  The Individuals then direct the Court to their Joint Motion to Remand, (ECF No. 24).  This motion notes that the Judge Stamp previously determined that no federal subject matter jurisdiction existed regarding the State Court Action, and that each Individual filed motions to remand in September 2017 while the State Court Action was pending in the Bankruptcy Court for the Northern District of West Virginia.  (ECF No. 24 at 3.)

In this case, Judge Stamp already determined that no federal subject matter jurisdiction exists regarding the State Court Action.  *Hard Rock Expl., Inc. v. Huntington Bancshares Inc.*, No. 1:16CV46, 2016 WL 1599489, at *3–5 (N.D. W. Va. Apr. 20, 2016).  And, as discussed above, bankruptcy jurisdiction no longer exists.  Thus, this Court lacks the authority to stay the State Court Action.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[S]ubject matter jurisdiction [is] the courts' . . . power to adjudicate the case.").  Instead, because "there is a want of jurisdiction," 28 U.S.C. § 1631, this Court will transfer the two adversary proceedings to the Northern District of West Virginia, with the instruction that the State Court Action be remanded to the Circuit Court of Monongalia County, and the recommendation that the Circuit Court stay the State Court Action pending resolution of the Federal Court Action.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the PF&R, (ECF No. 21), and **TRANSFERS** the two adversary proceedings to the Northern District of West Virginia.  The Court further **DIRECTS** the Clerk to remove this case from the Court's active docket.

**IT IS SO ORDERED**.

15

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        May 3, 2022

_____

THOMAS E. JOHNSTON, CHIEF JUDGE